UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
GINA DELIA, individually and as the EXECUTOR
OF THE ESTATE OF DENIS DELIA,

                     Plaintiff,                   19 Civ. 3109

      -against-

                                   COMPLAINT

UBS FINANCIAL SERVICES INC.,
UBS FINANCIAL SERVICES INC. FINANCIAL
ADVISOR SURVIVOR BENEFIT PLAN, and
the PLAN ADMINISTRATOR for the UBS
Financial Services Inc. Financial Advisor Survivor
Benefit Plan,

                     Defendants.
-----------------------------------------------------------------X

Plaintiff Gina Delia, individually and as Executor of the Estate of Denis Delia brings this action against defendants UBS Financial Services Inc. ("UBS"), UBS Financial Services Inc. Financial Advisor Survivor Benefit Plan and the Plan Administrator for the UBS Financial Services Inc. Financial Advisor Survivor Benefit Plan (the Plan Administrator and the UBS Financial Advisor Benefit Plan itself shall be collectively referred to as the "Plan Administrator") to recover damages caused by the defendants wrongful withholding of compensation (pursuant to the UBS Financial Advisor Compensation Plan ("*Comp. Plan*"), the UBS Financial Advisor Survivor Benefit Plan ("*Survivor Benefit Plan*" or the "Plan"), and the UBS Group Health and Welfare Benefits Plan ("*Welfare Plan*")) owed to Mrs. Delia after her husband, Mr. Delia, died in June 2018 while working and producing as a Financial Advisor for UBS in UBS's offices in New York, New York.  The wrongdoing includes misrepresentation, negligence, breach of contract, and breach of fiduciary duty in violation of the Employee Retirement Income Security Program of 1974 ("ERISA"), 29 U.S.C. §1101 *et seq*.

## PARTIES

1.      Plaintiff Gina Delia is an individual residing at 70 Scenic Drive, Hastings on Hudson, New York 10706.  Mrs. Delia is the widow of Denis Delia, executor of the estate of Mr. Delia and the beneficiary of UBS funded benefits under the *Survivor Benefit Plan* and the *Comp. Plan*.  Mrs. Delia has standing to bring this matter individually as she is the beneficiary under the *Survivor Benefit Plan* and the one being deprived of the compensation wrongfully withheld herein.

2.      Defendant UBS is a Delaware corporation with its principal place of business at 1200 Harbor Boulevard, Weehawken, New Jersey 07086.  UBS was the Plan sponsor and Employer of Mr. Delia until his death in June 2018.

3.      Defendant the UBS Financial Services Inc. Financial Advisor Survivor Benefit Plan is an ERISA benefits plan with its principal place of business at 1000 Harbor Boulevard, 10th Floor, Weehawken, New Jersey 07086.

4.      Defendant the Plan Administrator for the UBS Financial Services Inc. Financial Advisor Survivor Benefit Plan is an individual who acts in the capacity of Head of Benefits of UBS with a principal place of business at 1000 Harbor Boulevard, 10th Floor, Weehawken, New Jersey 07086.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to Section 502(a) of ERISA, 29 U.S.C. §1132(a) and pursuant to 28 U.S.C. §1331.  This Court also has subject matter jurisdiction of this matter as the controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states.  28 U.S.C. §1332.

6.     Venue is proper and this Court has personal jurisdiction over the defendants because UBS and the Plan Administrator do business in New York, UBS maintains an office in New York, and defendants' affiliations with New York are continuous and systematic and a substantial part of the events or omissions giving rise to this dispute occurred in New York.  28 U.S.C. §1391(b)

7.     Jurisdiction and venue are also proper by agreement of the parties.  The *Survivor Benefit Plan* provides that "[t]he Plan … shall be construed, administered and enforced according to applicable federal laws as interpreted and applied by the federal courts located in the State of New York."

## INTRODUCTION

8.     Upon Mr. Delia's passing, defendants denied Mrs. Delia survivor benefits (equal to one year of wages or $684,606) that Mr. Delia had earned and was entitled to while working for UBS as a Financial Advisor.  One component of Mr. Delia's compensation was the *Survivor Benefit Plan*.  The defendants represented and contractually agreed that they would notify Mr. Delia of his purported obligation to enroll in the *Survivor Benefit Plan **upon becoming "newly eligible"*** in December 2016.  The defendants failed to provide the required notice after Mr. Delia became newly eligible and, upon becoming eligible, failed to afford Mr. Delia the contractual right to enroll in the *Survivor Benefit Plan*.  Without being given the opportunity to enroll upon becoming newly eligible, Mr. Delia did not affirmatively enroll in the Plan.  After Mr. Delia's passing, defendants refused to pay the contractually due and earned remuneration. The Plan Administrator breached his fiduciary duty by ignoring the plain language of the Plan requiring that a newly eligible employee be notified and afforded the opportunity to enroll,

instead holding that an alleged premature and defective notification could properly substitute for the mandated actual notice and opportunity to enroll after becoming eligible.

## FACTUAL ALLEGATIONS

9.    Mr. Delia passed away unexpectedly in June 2018 at the age of 63 leaving his wife, Mrs. Delia, and their three school-aged children.

10.    Mr. Delia had an exemplary career within the securities industry beginning in 1983 with E.F. Hutton and remaining with the same firm (and its successors) for 30 years until being recruited and hired in 2013 by UBS where he worked until his passing.

11.    After Mr. Delia' passing, UBS Chief Executive Officer Sergio P. Ermotti wrote Mrs. Delia expressing his appreciation for all of Mr. Delia's hard work, stating "Mr. Delia was highly regarded by his colleagues and clients … Mr. Delia contributed a great deal to the firm's success and forged a well-deserved reputation for professionalism, hard work and commitment."  UBS Co-President of Global Wealth Management, Tom Naratil, also wrote Mrs. Delia expressing his appreciation, stating that "Mr. Delia was a beloved team member known for bringing positivity, warmth and joy with him wherever he went…. [Mr. Delia] enjoyed well-deserved respect and admiration from his peers, partners and clients, and his many contributions set a high standard for all."

12.    Mr. Delia was recruited by UBS in early 2013 to leave Morgan Stanley and join UBS because of Mr. Delia's spotless record within the securities industry and his business consisting of more than $130 million of assets under management built over the preceding 30 years.  UBS made Mr. Delia an offer to leave Morgan Stanley and join UBS to which Mr. Delia accepted.

13.     In the beginning of April 2013, Mr. Delia resigned from Morgan Stanley and, on April 11, 2013, became employed by UBS as a Financial Advisor.  The employment contract dated April 11, 2013 was executed by both parties.  Included within the contract's terms was the incorporation of the *Comp. Plan* ("Your payout shall be in accordance with the UBS Financial Advisor Compensation Plan in effect during the course of your employment … [y]ou acknowledge that you have been provided with a copy of the current UBS Financial Advisor Compensation Plan, which you are required to review").  The contract further provided "[y]ou will be eligible to participate in UBS' employee benefit plans and programs …[a]ny benefits to which you are entitled shall be determined in accordance with the terms and conditions of such plans and programs."

The *Comp. Plan*

14.     The *Comp. Plan*, which UBS described as its "commitment" to the employee was a contract between UBS and the Financial Advisor.  In it, UBS stated that "[a]t UBS, your compensation consists of four main components:

> • Cash compensation
> • Awards for Net New Business and UBS Length of Service
> • Aspiring Legacy FA Program
> • Other programs (including FA Survivor Benefit)"

15.     Concerning the *Survivor Benefit Plan*, the *Comp. Plan* stated:

> "The FA Survivor Benefit Plan is a Firm-paid benefit that provides financial protection to an FA's beneficiary in the event he/she passes away while still producing for the Firm.  In the event of death, the plan pays the beneficiary 100% of payout before adjustments (as reflected on Schedule C) for the calendar year preceding the calendar year of the death, up to a maximum of $2.5m.  The payout will be made to the beneficiary in 2 taxable payments over 2 years.  Please see **goto/facomp** for full program details, which are incorporated by reference into this document."

The *Survivor Benefit Plan*

16.      The *Survivor Benefit Plan* was also a contract between UBS and the Financial Advisor.  The *Survivor Benefit Plan*, in its introduction, stated that "[t]his booklet, referred to as a summary plan description or "**SPD**" is intended to describe the benefit (the '**FA Survivor Benefit'**) that will be available to your designated beneficiary if you participate in the Plan." The Plan further stated that "[t]he operation of the Plan is governed by the UBS Financial Services Inc. Group Health and Welfare Benefits Plan, this SPD and each insurance contract."

Eligibility to Enroll and to Participate in the *Survivor Benefit Plan*

17.      Eligibility to participate in the *Survivor Benefit Plan* required that the employee:

a.   be a full-time employee;

b.   hold the position of Financial Advisor;

c.   "have at least [three] years of continuous service with the Firm as of the date on which you are notified that you are eligible to participate in the Plan"; and

d.   have a 12-month gross production of $500,000 or more.

18.      According to the Plan, employees were "not eligible to participate in the Plan if: … (4) you do not satisfy the eligibility requirements described above."

19.      The *Welfare Plan* provided that "2.1.(A)  An Eligible Employee shall be eligible to participate in the Welfare Plan on the Effective Date, to the extent that he is eligible to participate in one or more of the Benefit Components forming a part of the Welfare Plan on such date; or if he becomes an Eligible Employee after the Effective Date, in accordance with the following: … on the earliest date that he becomes eligible for such Benefits in accordance with the eligibility and participation provisions …"

20.      UBS contractually promised in the *Survivor Benefit Plan* that "[t]he Plan Administrator will notify you if you are a Financial Advisor who becomes newly eligible to

enroll in the Plan." Becoming eligible was a *condition precedent* before the Plan Administrator was required to advise the Financial Advisor of his eligibility to enroll.  According to the terms of the Plan, only after proper notification did the Financial Advisor's performance under the contract (enrolling in the Plan) became due.

21.     The *Survivor Benefit Plan* further provided that "[i]f you are newly eligible, you must affirmatively enroll in the Plan if you wish to be a participant.  To enroll, you must elect the benefit via the Your Benefits Resources website during the effective Open Enrollment Period."  If the eligible employee failed to enroll "in accordance with this SPD", he would not be a participant in the Plan and would not have a future opportunity to participate.

22.     The *Welfare Plan* provides definitions concerning *Election of Benefits*, *Elective Benefits* and *Non-Elective Benefits*.  "Elective Benefits" are based on contribution requirements by the employee to participate.  However, eligible employees of *Non-Elective Benefits* are "automatically covered." Since the *Survivor Benefit Plan* was a 100% firm-funded plan, following the prescription in the *Welfare Plan*, no election to enroll and/or participate in the Plan should even have been required by Mr. Delia; instead, the employee's enrollment should have been automatic upon his meeting of the eligibility requirements.

<u>Mr. Delia Becomes Eligible to Participate in the *Survivor Benefit Plan*</u>.

23.     According to the UBS Director of Health & Welfare Benefits, Mr. Delia first became eligible to participate in the *Survivor Benefit Plan* on December 31, 2016.  This was based on Mr. Delia meeting the eligibility criteria of: (a) being a full-time Financial Advisor employed by UBS; (b) having a 12-month gross production of $500,000 or more; and (c) having had at least three years of continuous service with the Firm.

24.    It appears UBS used a calendar year in calculating the time period of service required to become eligible rather than the actual start-to-end term (of counting the first day of employment until the actual three years of service). Even if UBS used an actual three-year period, Mr. Delia would still not have completed his three-years of continuous service until April 10, 2016 (as Mr. Delia began his employment on April 11, 2013).

Upon Becoming Eligible, the Plan Administrator Failed to Notify Mr. Delia to Enroll in the *Survivor Benefit Plan*.

25.    The *Survivor Benefit Plan* specifically provides that the Plan Administrator would notify the Financial Advisor who becomes newly eligible to enroll in the Plan.  In violation of the contractual duties and obligations under the Plan, upon becoming newly eligible to participate in the Plan on December 31, 2016, the Plan Administrator failed to notify Mr. Delia of his eligibility and his need to enroll, denying Mr. Delia his contractual right to enroll.

26.    As a result of the Plan Administrator's failure to both notify Mr. Delia of his eligibility and provide him with the opportunity to enroll in the *Survivor Benefit Plan*, Mr. Delia did not enroll in it.

Mr. Delia Dies and Defendants Refuse to Pay Mrs. Delia Survivor Benefits

27.    In June, 2018, Mr. Delia died while employed by, and producing for, UBS.

28.    After his death, Mrs. Delia became aware of the *Survivor Benefit Plan*, among other benefits and remuneration, and requested that the survivor benefits be paid to her.  In response, the defendants denied the request asserting that Mr. Delia failed to enroll in the Plan during the open enrollment period occurring in March 2016, before Mr. Delia even became eligible.

29.    Specifically, the defendants alleged that Mr. Delia was the recipient of four generic "blast" emails (on February 18, 25 and March 1 and 7, 2016), months before becoming

eligible (on December 31, 2016) of his need to enroll by March 2, 2016 in the *Survivor Benefit Plan* or forever be barred from participating.  Defendants have alleged that Mr. Delia failed to enroll in the Plan at that time and, accordingly, survivor benefits were denied.

30.     Plaintiff denies receipt of the emails alleged to have been sent to Mr. Delia.  The emails presented to Mrs. Delia after Mr. Delia's death, if even legitimate, are in conflict with the terms and conditions of the *Survivor Benefit Plan*, the *Comp. Plan* and the *Welfare Plan*. And, the purported "open enrollment period" referenced in the alleged emails set an arbitrary two-week enrollment period ending on March 2, 2016, months before Mr. Delia even would become eligible to enroll in the *Survivor Benefit Plan*.

31.     In taking this position, the defendants completely ignored the fact that the defendants deprived Mr. Delia of his contractual right, ***upon becoming newly eligible***, to be both notified and afforded the opportunity to enroll in the Plan.

32.     The defendants' denial of benefits failed to comply with ERISA (29 U.S.C. §1133) and with the terms of the Plan which require that "the Claimant" receives a written notice stating:

  a.  The specific reason(s) the claim was denied;

  b.  Specific reference to the Plan provision(s) on which the denial was based;

  c.  Any additional information required for the claim to be reconsidered, and the reason this information is necessary; and

  d.  A statement informing the Claimant of his or her right to appeal the decision, and an explanation of the appeal procedure…"

33.     In a June 26, 2018 email, the designee for the Plan Administrator provided to Mrs. Delia the written *Survivor Benefit Plan*.

<u>Mrs. Delia Appeals the Oral Denial of Benefits</u>

34.     That same day, on June 26, 2018, Mrs. Delia submitted a written appeal for

benefits.  In the appeal, Mrs. Delia stated:

> It is our belief that Denis had no reason not to take advantage of this benefit offered by and paid for solely by UBS.
>
> Denis never mentioned to me the existence of this benefit nor of any intent on his part to not participate in any such benefit.  We always discussed these major life decisions together and, had he raised it, we would have 100% concluded that he enroll, based on our prior decisions together.
>
> We are not aware of Denis receiving any email or other notices from UBS relating to the Plan.  In addition, we are not aware of Denis indicating to UBS that he had intended not to participate in a plan that would obviously have been very beneficial to his family.
>
> We believe that Denis should have been enrolled in the UBS FA Survivor Plan. We do not believe that he was even aware of its existence, or (if he was) that he was aware of any sort of opt-in component to a benefit that was not costing him anything.
>
> We respectfully request that Denis be treated as if he had been enrolled in the Plan.

<u>The Plan Administrator Ignores the Plain Language of the Plan and Denies the Appeal</u>

35.     On August 23, 2018, the Plan Administrator wrote Mrs. Delia denying her appeal,

relying exclusively on the four alleged emails from February and early March 2016.  Acting in

an arbitrary and capricious manner, and in breach of the representations contained in the

*Survivor Benefit Plan*, the Plan Administrator ignored the Plan's plain and non-discretionary

language that contractually obligated the Plan Administrator to, upon Mr. Delia's becoming

newly eligible on December 31, 2016 to participate in the Plan, to both notify Mr. Delia of his

eligibility and to provide Mr. Delia the opportunity to enroll.  Instead, the Plan Administrator

held that the premature February and March 2016 emails allegedly sent to, and received by,

Mr. Delia, fulfilled the obligations required under the *Survivor Benefit Plan* ("The emails and

the Summary Plan Description for the Plan clearly indicate that you must actively elect to participate in the Plan during the enrollment period in which you initially become eligible to participate in the Plan.")

36.   In so ruling, the Plan Administrator:

a.   Placed both UBS's and the Plan Administrator's interests ahead of the participant's and beneficiaries' interests;

b.   Failed to avoid a conflict of interest, acting as the Plan's administrator, employee of UBS and payor of the benefits;

c.   misrepresented that firm-funded benefits would not require an affirmative enrollment;

d.   failed to notify Mr. Delia of the need to enroll in the Plan.

e.   failed to interpret the plan in a manner consistent with the Plan's plain words;

f.   failed to provide a full and fair review of the claim;

g.   failed to consider any and all pertinent and reasonably available information;

h.   failed to base the decision on substantial evidence;

i.   failed to provide plaintiff with an opportunity to examine the evidence and to submit written comments or rebuttal documentary evidence;

j.   failed to demonstrate that the Plan Administrator considered the evidence from both sides and explain why the Plan Administrator found as he did;

k.   failed to ensure that the person who made the initial denial was not the same person who made the appellate decision;

l.   rendered an unreasonable interpretation of the Plan documents contrary to the sole and exclusive benefit of the employee; and

m.   imposed a standard not required by the Plan's provisions, or interpreted the Plan in a manner inconsistent with its plain words, or by the Plan Administrator's interpretation, rendered some provisions of the Plan superfluous.

37.     Although required under ERISA, the Plan Administrator's August 23, 2018 letter failed to provide:

        a. "a specific reference to the Plan provision(s) on which the denial was based;

        b.  A statement that the Claimant is entitled to receive copies of all documents, records and other information relevant to his or her claim; and

        c. A statement informing the Claimant of his or her right to bring a civil action under Section 502(a) of ERISA"

38.     Further, the Plan Administrator had a conflict of interest.  Besides the fact that the Plan Administrator is an employee of UBS, the *Survivor Benefit Plan* was unfunded and "paid solely from the general assets of the Firm."  UBS was in the process of scaling back the Plan due to its escalating financial costs to UBS.  *See, e.g.*, *2014 FA Comp. Plan – Summary of key changes* ("The cost of the survivor benefit has increased significantly since we started the program.  We have increased the firm length of service required to participate in the future but will keep it at three years for anyone hired prior to 1/1/2014.")

39.     Plaintiff has exhausted her administrative remedies under the Plan and under ERISA.

## CAUSES OF ACTION

### Count I - Breach of Contract Against UBS and the Plan Administrator

40.     Plaintiff repeats each and every allegation stated in paragraphs 1 through 39 as if set forth at length herein.

41.     Multiple contracts existed between Mr. Delia and UBS including the April 11, 2013 offer letter, the *Comp. Plan,* and the *Survivor Benefit Plan* which provided, *inter alia*, that in return for Mr. Delia working for UBS, he would be entitled to be paid and receive the

various components of compensation, including, but not limited to, benefits under the *Survivor Benefit Plan*.

42.    The Plan Administrator was also a party to the *Survivor Benefits Plan*.

43.    These contracts generally and specifically promised that Mr. Delia would be provided, at no cost to him, survivor benefits in the event he met certain eligibility criteria; to wit, having been a financial advisor for the firm with at least three years of continuous service and generating a 12-month gross production of $500,000 or more.

44.    On or about December 31, 2016, Mr. Delia had completed three years of continuous service and had generated a 12-month gross production of more than $500,000. Accordingly, on or after December 31, 2016, Mr. Delia first became eligible to: (a) be notified about; (b) enroll in; and (c) participate in the *Survivor Benefit Plan*.  Mr. Delia fully performed all obligations required of him under the aforementioned contracts.

45.    In return, UBS contractually promised to pay all compensation due Mr. Delia, including as provided for in the *Comp. Plan* and the *Survivor Benefit Plan*.  UBS and the Plan Administrator also contractually promised that the Plan Administrator would notify Mr. Delia when he became "newly eligible to enroll in the Plan."  And, UBS and the Plan Administrator contractually agreed that upon reaching eligibility, Mr. Delia would be both notified of his eligibility to enroll and to be afforded the opportunity to enroll in the *Survivor Benefit Plan*.

46.    Upon becoming newly eligible, UBS and the Plan Administrator failed to *notify* Mr. Delia of his eligibility to participate in the *Survivor Benefit Plan* and failed to offer Mr. Delia the opportunity to enroll in the plan.  With lack of notice and opportunity upon becoming newly eligible, Mr. Delia did not elect to participate in the Plan and was thereafter forever prohibited from participating.  UBS thus breached the contract.

47.     As a result of UBS's and the Plan Administrator's breach of contract, plaintiff has sustained actual damages including, but not limited to 100% of Mr. Delia' Schedule C payout, before adjustments, for the calendar year preceding the year of death.  For calendar year 2017, Mr. Delia's W-2 wages were $684,606 to which plaintiff is entitled to in damages, plus pre- and post-judgment interest, costs of suit, and such further relief as the trier of fact deems just and proper.

### Count II - Breach of Implied Covenant of Good Faith and Fair Dealing Against UBS and the Plan Administrator

48.     Plaintiff repeats each and every allegation stated in paragraphs 1 through 47 as if set forth at length herein.

49.     In the alternative to plaintiff's breach of contract claim, plaintiff asserts a claim for breach of the covenant of good faith and fair dealing.  Implied in every contract is a promise that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

50.     UBS and the Plan Administrator breached the covenant of good faith and fair dealing by: (a) failing to timely notify Mr. Delia of his right to enroll and participate in the firm-paid *Survivor Benefits Plan* upon becoming newly eligible; (b) failing to adequately and timely notify Mr. Delia (upon becoming newly eligible) through reasonable means that alerted him (and presumably other similarly situated financial advisors) of the prerequisite to enroll in the Plan (if even necessary, since it was firm-funded) (c) failing to afford Mr. Delia the opportunity to enroll in the Plan after he became eligible; and (d) failing to pay to plaintiff the firm-paid survivor benefits.

51.     As a result of UBS's and the Plan Administrator's breach of the implied covenant of good faith and fair dealing, plaintiff has sustained actual damages of $684,606, plus pre- and post-judgment interest, costs of suit, and such further relief as the trier of fact deems just and proper.

### Count III -Misrepresentation Against UBS and the Plan Administrator

52.     Plaintiff repeats each and every allegation stated in paragraphs 1 through 51 as if set forth at length herein.

53.     Both ERISA and U.S. Department of Labor regulations place the burden on the employer to draft a plan that is accurate, comprehensible, and clear regarding restrictions on eligibility for benefits.

54.     ERISA specifically prohibits the making of false statements and false representations by employers and/or Plan Administrators to employees of benefits plans.  29 U.S.C. §1149.

55.     As part of the employer/employee relationship, UBS and the Plan Administrator intentionally or negligently misrepresented and/or made false statements to Mr. Delia that:

a.  upon becoming newly eligible, the Plan Administrator would notify Mr. Delia of his entitlement to participate in the *Survivor Benefit Plan*;

b.  upon becoming newly eligible and after being notified of his eligibility to both enroll in, and then participate in, the *Survivor Benefit Plan*, that Mr. Delia would be provided the opportunity to enroll in the plan during the applicable open enrollment period; and

c.  firm-funded benefits would not require an affirmative enrollment.

56.     At the time the defendants made the aforementioned misrepresentations, defendants knew or should have known that the misrepresentations were false. Defendants knew they would not notify Mr. Delia of his right to participate in the *Survivor Benefit Plan*

after Mr. Delia became eligible; knew that they were not going to utilize an open enrollment period, instead applying an arbitrary two-week period after which enrollment and participation was permanently forfeited; and knew that since the Plan was firm-funded, participation should not require any affirmative conduct (or enrollment) by the employee in order to participate in the Plan and receive the benefits.

57.     Defendants made the aforementioned misrepresentations intending that Mr. Delia would rely on the misrepresentations, and Mr. Delia, did in fact, reasonably rely to his detriment on the misrepresentations.

58.     As a direct and proximate result of the defendants' misrepresentations, plaintiff has suffered significant injury and is entitled to damages.   In the event the trier of fact determines that the defendants' misrepresentations were intentional, then in addition to being ordered to pay compensatory damages, exemplary damages should be awarded to punish the defendants for such wrongful conduct in amount sufficient to deter wrongful conduct in the future.

### Count IV - Breach of Fiduciary Duty Against the Plan Administrator
### ERISA §502(a), 29 U.S.C. § 1104(a)

59.     Plaintiff repeats each and every allegation stated in paragraphs 1 through 58 as if set forth at length herein.

60.     29 U.S.C. § 1104 ("Fiduciary duties") provides that a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries … (D) in accordance with the documents and instruments governing the plan …"

61.     According to the *Survivor Benefit Plan*, the Plan Administrator owed a fiduciary duty to Mr. Delia "to [discharge its fiduciary duty] prudently and in the interest of you and other Plan participants and you."

62.     The Plan Administrator breached his fiduciary duty by:

a.  Misrepresenting that the employee would be provided the opportunity to enroll in the Plan, *after* becoming eligible, therein failing to act in the sole interest of the participants and beneficiaries in violation of § 404(a) of ERISA;

b.  placing both UBS's and the Plan Administrator's interest ahead of the participants and beneficiaries by administering the Plan with the intent of reducing the number of enrollees, and thus accomplishing UBS's stated goal of lowering its costs in maintaining the Plan;

c.  failing to avoid a categorical conflict of interest by being the administrator, employee of UBS and payor of the benefits of this unfunded Plan;

d.  failing to notify Mr. Delia of the need to enroll in the Plan and, thereafter, failing to afford Mr. Delia the opportunity to enroll in the Plan.

e.  misrepresenting that firm-funded benefits would not require an affirmative enrollment;

f.  failing to interpret the plan in a manner consistent with the Plan's plain words;

g.  failing to provide a full and fair review of the claim;

h.  failing to consider any and all pertinent information reasonably available to the Plan Administrator;

i.  failing to base his decision on substantial evidence;

j.  failing to provide plaintiff with an opportunity to examine the evidence and to submit written comments or rebuttal documentary evidence;

k.  failing to demonstrate that the Plan Administrator considered the evidence from both sides and explain why the Plan Administrator found as he did;

l.  failing to ensure that the person who made the initial denial was not the same person who made the appellate decision;

m.  failing to follow the U.S. Dep't. of Labor requirements in the denial letter;

n.  failing to follow ERISA regulations, which requires that notice to the claimant set forth a description of the plan's review procedures and the

time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action;

o. rending an unreasonable interpretation of the Plan documents made not for the sole and exclusive benefit of the employee;

p. imposing a standard not required by the Plan's provisions, or interpreted the Plan in a manner inconsistent with its plain words, or by the Plan Administrator's interpretation, rendered some provisions of the Plan superfluous; and

q. violating the terms of the Plan; failing to both follow the Plan's own claims procedure; and failing to meet the minimum regulatory requirements as set by the U.S. Department of Labor in issuing a defective decision denying Plan benefits.

63.    The Plan Administrator's actions were an abuse of discretion, arbitrary and capricious, and erroneous as a matter of law.

64.    The Plan Administrator's actions in determining eligibility were not discretionary as this determination was a gateway question mandating strict adherence to the Plan's terms concerning eligibility.

65.    As a direct and proximate result of the Plan Administrator's breach of fiduciary duty, plaintiff has suffered significant injury and is entitled to damages including, but not limited to, 100% of Mr. Delia' Schedule C payout, before adjustments, for the calendar year preceding the year of death.

### Count V – Negligence Against the Plan Administrator

66.    Plaintiff repeats each and every allegation stated in paragraphs 1 through 65 as if set forth at length herein.

67.    Upon Mr. Delia becoming newly eligible, the Plan Administrator had a duty to both notify Mr. Delia of his need to enroll in the *Survivor Benefit Plan* and to afford Mr. Delia the opportunity to enroll in the Plan.

68.     The Plan Administrator failed to notify Mr. Delia of his need to enroll in the *Survivor Benefit Plan* upon Mr. Delia becoming newly eligible and failed to provide Mr. Delia the opportunity to enroll in the Plan.

69.     The Plan Administrator further failed to administer the Plan and carry out his fiduciary duties in a non-negligent manner.

70.     The Plan Administrator's failure breached these duties and failed to conform to the required standard of conduct.

71.     The Plan Administrator's negligent conduct was the cause of harm and injury to the plaintiff, and the plaintiff was, in fact, harmed or damaged.

72.     As a direct and proximate result of the Plan Administrator's negligence, plaintiff has suffered significant injury and is entitled to damages including, but not limited to, 100% of Mr. Delia' Schedule C payout, before adjustments, for the calendar year preceding the year of death.

## Count VI – Unjust Enrichment Against UBS

73.     Plaintiff repeats each and every allegation stated in paragraphs 1 through 72 as if set forth at length herein.

74.     The Plan Administrator's improper denial of benefits rightly due plaintiff resulted in an undeserving windfall on UBS; to wit, the retention of monies to which UBS was not rightly entitled.

75.     UBS's acceptance and retention of the benefits at plaintiff's expense would be inequitable, to the detriment of the plaintiff, and constitute an unjust enrichment upon UBS.

**Count VII – Reformation Against the Plan Administrator**

76.     Plaintiff repeats each and every allegation stated in paragraphs 1 through 75 as if set forth at length herein.

77.     The *Survivor Benefit Plan* states that the Plan Administrator is empowered to "[c]onstrue and interpret the terms and provisions of the Plan and all documents which relate to the Plan, and to decide any and all matters arising under the Plan, including the right to *remedy possible ambiguities, inconsistencies or omissions*."

78.     In the circumstances of this matter, the Court should exercise the equitable remedy of reformation because of the ambiguities, inconsistencies or omissions contained in the *Survivor Benefit Plan* and order that the Plan Administrator reform the Plan so that survivor benefits are paid to plaintiff.

**JURY DEMAND**

79.     Plaintiff demands a trial by jury for all non-ERISA based claims.

**RELIEF SOUGHT**

WHEREFORE, plaintiff respectfully requests judgment against the defendants as follows:

(a)  Determining and declaring that defendant UBS is liable to the plaintiff on Counts I, II, III and VI;

(b)  Determining and declaring that defendant the Plan Administrator is liable to the plaintiff on Counts I, II, III, IV, V and VII;

(c)  Awarding plaintiff compensatory damages in the amount of $684,606;

(d)  Awarding plaintiff her costs and disbursements in this action;

(e)  Awarding plaintiff her attorney's fees pursuant to ERISA, 29 U.S.C. § 1132(g)(1);

(f)  Awarding exemplary damages; and

(g)  Granting plaintiff such other and further relief as this Court may deem just and
proper.

Dated: New York, New York
April 8, 2019

**SUSSMAN & FRANKEL, LLP**

By:    */s/ Neil Sussman*
Neil A. Sussman, Esq., NS2203
*Attorneys for Plaintiff*
805 Third Avenue, Twelfth Floor
New York, New York 10022
nas@sussman-frankel.com
Tel: (212) 688-8895
